# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAST BAY RESTAURANT & TAVERN RETIREMENT PLAN<br>    and<br>LIAN ALAN, DOUG CORNFORD, YULISA ELENES, KEVIN GLEASON, WEI-LING HUBER, and JOSE ZARATE, in their capacities as Trustees of the East Bay Restaurant and Tavern Retirement Plan,<br><br>                    Plaintiffs,<br><br>v.<br><br>FUNDAMENTAL CAPITAL MANAGEMENT, LLC, and JOHN WOODROW KRIEGER,<br><br>                    Defendants. | Demand for Jury Trial<br><br><br><br>Civil Action No. |

## COMPLAINT

Plaintiffs East Bay Restaurant & Tavern Retirement Plan ("Plan") and Lian Alan, Doug Cornford, Yulisa Elenes, Kevin Gleason, Wei-Ling Huber, and Jose Zarate, Trustees of the Plan (collectively "Trustees") brings this action to remedy breaches of fiduciary duty and other acts  in violation of the Employment Retirement Income Security Act of 1974 ("ERISA") and common law committed by defendants Fundamental Capital Management, LLC ("Fundamental Capital") and John Woodrow Krieger ("Krieger") (collectively, "Defendants) and to recover Plan funds invested through and controlled by the Defendants. Plaintiffs alleges as follows:

## I.      **INTRODUCTION**

1.      Plaintiff East Bay Restaurant & Tavern Retirement Plan is a Taft Hartley Retirement Fund. The Plan was created under a Trust Agreement in 1982.  Each of the Trustees is currently a trustee of the Plan.

2.      The Plan has approximately $32.5 million in assets and is responsible for retirement benefits for approximately 4,750 active and retired participants. The participants are, or were, unionized food service, hospitality and gaming, in the Oakland, California area.

3.      This is a civil enforcement action brought pursuant to section 502 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. This lawsuit is for breach of fiduciary duty, other intentional misconduct and negligence in the management and investment of the Plan's assets and for unjust enrichment and self-dealing by the defendants. This action is brought pursuant to ERISA, the federal statute that comprehensively regulates such plans, as well as common law. Plaintiffs seek damages and injunctive relief to recover the Plan's money.

4.      Plaintiffs bring this action in their capacity as trustees for the Plan against Fundamental Capital Management LLC and John Woodrow "Jay" Krieger, who were responsible for managing the Plan's investments or who exercised authority or control respecting management or disposition of the Plan's invested assets ("Defendants" or "the Plan's fiduciaries").

5.      As a substantive matter, Plaintiffs allege, *inter alia*, that the Defendants are fiduciaries and that Defendants breached their duties with respect to investment of the Plan's assets in Fundamental Credit LP ("Fundamental Credit"), a Delaware limited partnership created and controlled by the Defendants. Fundamental Credit's General Partner is, and at all relevant times has been, Defendant Fundamental Capital Management. Defendant Krieger is, and at all relevant

times has been, the Principal and Chief Investment Officer of Defendant Fundamental Capital Management.

6.      Fundamental Credit was originally touted by the Defendants as a diverse investment vehicle that would be appropriate for a retirement fund such as the Plan. Fundamental Credit was originally represented as a "fund of funds" which would capitalize on advantageous interest rates by investing primarily in various other hedge funds or venture capital funds. However, over time, Fundamental Credit became increasingly less diverse and put less of its assets into other funds. Fundamental Credit devoted more and more of its assets, including the contributions of the Plan, into a single company, Cyber adAPT, a start-up computer security firm.

7.      Cyber adAPT was also a company in which Defendant Krieger had an undisclosed personal interest, upon information and belief. For some time until the middle of 2015 Krieger was Cyber adAPT's CEO. Krieger also sits on the Board of Directors of Cyber adAPT.

8.      The Defendants' investment focus on a single private company's notes and securities substantially increased the risk of investment in Fundamental Credit, and also substantially decreased Fundamental Credit's liquidity. The Plan's investment in Fundamental Credit became contrary to the Plan's investment objectives, and thus made Fundamental Credit an unsuitable investment for the Plan.

9.      This complaint asserts that the Defendants' actions concerning the Plan's investments in Fundamental Credit, as well as the Defendants' refusal to redeem the Plan's investment, constitute breaches of Defendants' ERISA and common law fiduciary duties owed to the Plan, or, in the alternative, that these actions constitute common law gross negligence and negligence. The Defendants' continued investment of Fundamental Credit's money in a business that Defendant Krieger had a substantial personal interest in also constitutes self-dealing and unjust

enrichment. Plaintiffs seek, among other things, rescission of the Plan's investments, disgorgement of fees and profits, and attorneys' fees and costs.

## II.      JURISDICTION AND VENUE

10.     This is a civil enforcement action pursuant to ERISA § 502, 29 U.S.C. § 1132. This Court has original, exclusive subject matter jurisdiction of this action pursuant to specific jurisdictional statutes for claims of this type, ERISA § 502(e)-(f), 29 U.S.C. § 1132(e)-(f). This Court also has subject matter jurisdiction over this action as a federal question pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant Fundamental Capital is a Delaware limited liability company. Venue is also proper in this District and because the Limited Partnership Agreement with the Plan and the defendants has designated Delaware as the proper venue for the resolution of disputes arising under the agreement.  *See* Limited Partnership Agreement, attached as Exhibit A Sec. 14.8, page 31.

## III.      THE PARTIES

12.     Plaintiff East Bay Restaurant & Tavern Retirement Plan is a multiemployer employee pension benefit plan as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), with its principal place of business located in San Francisco.

13.     Plaintiffs Lian Alan, Doug Cornford, Yulisa Elenes, Kevin Gleason, Wei-Ling Huber, and Jose Zarate are the current trustees of the Plan.

14.     Defendant Fundamental Capital Management, LLC is a hedge fund manager organized in Delaware and located at 140 South Lake Avenue, Suite 302, Pasadena, California,

91101. It is the General Partner of Fundamental Credit LP. Fundamental Capital Management was created by Defendant Krieger in 2003.

15.     Defendant John Woodrow "Jay" Krieger is the founder, Chief Investment Officer, and Principal of Fundamental Capital Management, LLC and resides in Pasadena, California. Krieger is the driving force behind Fundamental Capital and, therefore, Fundamental Credit. It is Krieger, operating through Fundamental Capital, who controls all of Fundamental Credit's assets and makes all of its investment decisions.

16.     Krieger is also a member of the board of directors of Cyber adAPT, and, for some period of time, was also Cyber adAPT's CEO. Upon information and belief, Krieger has a personal investment in Cyber adAPT as well. Krieger's position as an officer and director of Cyber adAPT was not revealed to the Plaintiffs, either at the time of the Plan's investments in Fundamental Credit, or at the time Krieger became a board member of Cyber adAPT.

## IV.    THE PLAN'S INVESTMENT IN FUNDAMENTAL CREDIT

17.     The Plan's Trustees work diligently to invest the Plan's assets in securities and investment vehicles that will provide sufficient retirement benefits for Plan participants. The Plan's stated investment objectives include: preservation of purchasing power; long term growth of capital; and preservation of capital. The Plan's investments are intended to be diversified and avoid unnecessary risks and volatility. The Plan also wants its investments to be liquid, so they can be sold quickly.

18.     The Defendants knew of the Trustees and the Plan's investment objectives and investment philosophy prior to the Plan making any investment through the Defendants.

19.     Fundamental Credit was created by Krieger in 2008 as an investment vehicle, with Fundamental Capital Management as its General Partner. The relevant partnership agreement is

the Fifth Amended and Restated Limited Partnership Agreement ("Limited Partnership Agreement") and is attached hereto as Exhibit A. Krieger is signatory to the Limited Partnership Agreement for both the General Partner, Fundamental Capital Management, and the Limited Partners.  The Plan is a Limited Partner in Fundamental Credit.

20.     Under the terms of the Limited Partnership Agreement, the General Partner, Fundamental Capital Management, determines what activities and transactions are "necessary or advisable" with regard to Fundamental Credit's purpose of "achieving superior, risk-adjusted investment returns for its Partners". The General Partner also has "sole," "absolute," or "exclusive" discretion with respect to a number of Fundamental Credit's activities *See* Exhibit A, Article 2.5 and Article 6.4.2(i).

21.     Originally the Defendants advertised Fundamental Credit as "a fund of structured credit funds" and "a fund of long/short credit funds seeking to exploit the persistent dislocation and asymmetric risk/reward opportunity in the structured credit markets." Defendants claimed Fundament Credit used "credit managers with superior trading, hedging, and credit analysis skills" and that they could "achieve consistent returns with modest principal risk and low volatility".

22.     Krieger described himself as having "25 years' experience investing in hedge funds."

23.     A Fundamental Credit marketing document from November 2013 describes Fundamental Credit as "a fund of alternative credit funds which, relative to traditional fixed income portfolios, has earned greater returns with less volatility, comparable credit risk and less duration risk." Fundamental Credit said it had "assembled a team of credit managers with expertise in the sub-sectors of credit that remained the least efficient and had the least duration risk."

24.     In that same document, Defendant Krieger is described as "analyzing and allocating to hedge funds since 1985. In January of 2009, Mr. Krieger launched Fundamental Credit to exploit dislocations in the credit market."

25.     In its marketing documents Defendants claim that the "duration" of the assets Fundamental Credit invests in is 1.4 years.

26.     Defendant Krieger personally spoke to the Plan's Trustees to tout a further investment in Fundamental Credit at a Trustees' Meeting in October 2014. At that meeting Krieger again described Fundamental Credit as a fund that invests in hedge funds.

27.     Nowhere in these marketing documents or presentations do the Defendants disclose that Fundamental Credit would be investing a substantial portion of its assets in a single company, nor do they disclose that Krieger has an interest in the company in which Fundamental Credit will be investing. Nor do they disclose that placing 20% or more of Fundamental Credit's assets in a single company will create substantial additional risk and illiquidity.

28.     Page 1 of the Offering Memorandum for Fundamental Credit says that Defendant Fundamental Capital Management believes the Fund's "objective can be achieved by investing directly or through a number of independent investment managers (each a "Sub-Advisor")" and that Fundamental Credit "will primarily invest in funds manage by sub-advisors", while Page 6 references the "fund of funds strategy used by the Partnership".

29.     On or about February 11, 2014, the Plan entered into a Subscription Agreement with Fundamental Credit.

30.     On or about February 1, 2014, after discussions with Krieger and the Plan's Investment Consultant, the Plan made an initial investment of $5,000,000.00 into Fundamental Credit.

31.     On or about May 1, 2015, the Plan made an additional investment of $1,405,679.20.

32.     After these contributions, the Plan held approximately 20% of the ownership interest in Fundamental Credit.

## V.     THE DEFENDANTS IMPROPERLY MANIPULATE FUNDAMENTAL CREDIT'S INVESTMENTS

33.     Initially, Fundamental Credit's assets were broadly diversified, with only a small portion of its assets invested in the stock or debt instruments of individual companies. However, over time Fundamental Credit became less diversified, ceasing to invest in other funds and increasing its investment, both in total dollars and as a percentage of Fundamentals Credit's overall assets, in the debt instruments of individual companies.

34.     According to its financial statements, in 2014 Fundamental Credit's investment in private technology companies was less than $1,000,000.00 and represented approximately 3% of Fundamental Credit's overall assets. However, by the end of 2017 Fundamental Credit owned $8.6 million worth of Cyber adAPT's notes and securities, representing 23% of Fundamental Credit's overall assets. Fundamental Credit did not own the notes or securities of any other company in 2017.

35.     Investments in Cyber adAPT are especially illiquid, and thus inappropriate as a pension investment, because it is not a publicly-traded company.

36.     The chart below details Fundamental Credit's increasing investment in Cyber adAPT:

|  | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|
| Investment in Cyber adAPT | $0 | $2.3 million | $4.4 Million | $8.6 million |
| Cyber adAPT as Percentage of overall assets | 0% | 7.4% | 12.8% | 23% |

37.     Fundamental Credit's change in investment strategy, and its increasing investments in a single company, were never discussed with or revealed to the Plan, the Trustees or the Plan's Investment Consultants.

38.     Of course, investing in the assets of a single company is the opposite of diversification and being a "fund of funds." By investing a larger and larger percentage of its assets in a single company, Fundamental Credit made itself a much riskier investment for the Plan.

39.     Investing in the stock and notes of a single privately held company, as opposed to investing in other funds, also made Fundamental Credit's investments much less liquid, or easily sold. Defendants knew this was contrary to the Plan's investment objectives.

40.     Cyber adAPT, the object of the Defendants' increasing affections, was a start-up computer security business that was "chronically underfunded" from its inception through at least 2018 and was "unable to timely and fully pay" its vendors and employees, according to allegations in a recent lawsuit brought by Cyber adAPT's former CEO, J. Kirsten Bay. None of these problems were ever revealed to the Plaintiffs, even though the Defendants were well aware of them.

41.     To the contrary, and contrary to the Plan's investment objectives, in spite of Cyber adAPT's struggles the Defendants continued to invest more and more of Fundamental Credit's money into Cyber adAPT.

42.     At the same time, the Plan had also invested in another limited partnership, Fundamental LP, which was also controlled by Defendants Fundamental Capital Management and Krieger. Unbeknownst to the Plan, Fundamental LP was engaging in the same practices as Fundamental Credit: investing a larger and larger portion of its assets in Cyber adAPT. This had

the effect of making the Plan's investment in Fundamental Credit even riskier, since another of the Plan's investments was also heavily invested in Cyber adAPT.

43.     Between Fundamental Credit and Fundamental LP the Plan had unknowingly invested a substantial percentage of its assets in securities and notes of Cyber adAPT, a start-up computer company the Plaintiffs knew nothing about.

44.     Since much of Fundamental Credit's investment in Cyber adAPT was in the form of notes and common stock for which there was no market, this also meant that Fundamental Credit's investment in Cyber adAPT became less and less liquid. The illiquidity of Fundamental Credit's investments also makes Fundamental Credit itself a riskier investment for plans such as the Plaintiff.

45.     In May 2018, the Plan hired New England Pension Consultants ("NEPC") as its new investment manager.

46.     On August 13, 2018, the Plan, through its new investment manager NEPC, learned from Defendants that a significant portion of the Plan's existing investment in Fundamental Credit—which was approximately $7,700,000.00—was invested in illiquid assets consisting primarily of debt instruments of Cyber adAPT.

47.     On August 27, 2018, the Plan learned from NEPC representatives, for the first time, that significant portions of its investment in Fundamental Credit was in illiquid assets of Cyber adAPT and could not be redeemed at that time.

**VI.     THE DEFENDANTS REFUSE TO PROVIDE MONEY OR INFORMATION**

48.     In September 2018, the Plaintiffs recognized that Fundamental Credit's large investment in Cyber adAPT was contrary to the Plan's investment strategy. The Plaintiffs sent a

letter to Fundamental Capital Management indicating their desire to fully redeem the Plan's entire interest in Fundamental Credit as soon as possible.

49.     In response, Fundamental Credit indicated that redemption could not take place until January 2019.

50.     The Limited Partnership Agreement provided for payment 130 days period after notice. *See* Exhibit A, Sec. 6.4.2, page 19.

51.     However, no redemption took place in January 2019. On or about April 18, 2019, Fundamental Credit made a partial distribution to the Plan of only $950,000.00.

52.     On or about May 8, 2019, Fundamental Credit made a distribution to the Plan in the amount of $1,000,000.00.

53.     On or about June 21, 2019, Fundamental Credit made a distribution to the Plan in the amount of $505,250.00.

54.     On or about January 9, 2020, Fundamental Credit made a distribution to the Plan in the amount of $1,300,000.00.

55.     On or about April 8, 2020, Fundamental Credit made a distribution to the Plan in the amount of $374,627.03, which included $95,170.64 due to the late redemption.

56.     As of June 2020, over 20 months after Plaintiffs demanded redemption, the Defendants still have not redeemed all of the Plan's investment in Fundamental Credit, despite repeated requests from the Plaintiffs.

57.     As of June 2020, the Plan may have approximately $3.9 million still invested in Fundamental Credit, which Fundamental Credit is unwilling or unable to return.   The Plan does not know the exact amount of its current interest in fundamental Credit, since it has not received any of the required financial reports from Fundamental Credit since June 2019.

58.     Fundamental Credit's large investment in the illiquid assets of Cyber adAPT is what prevented Fundamental Credit and the Defendants from redeeming the Plan's investment. Fundamental Credit's inability to return the Plan's investment is further evidence that the Plan's investment in Fundamental Credit was unsuitable and inconsistent with the Plan's stated investment objectives, including liquidity.

59.     The Plan and its agents and investment managers have had numerous conversations with Defendant Krieger, in which they have demanded a return of the Plan's investment and complete details of what Fundamental Credit is invested in. Despite these requests, the Defendants have been either slow to provide information or have failed to provide requested information.

60.     The Defendants have also been slow to provide required financial information on Fundamental Credit, or not provided the information at all. Under the Limited Partnership Agreement, audited financials should be provided "as soon as practicable" after year end, Exhibit A, Sec. 9.7.1, page 26.

61.     On numerous occasions, Plan representatives requested that Fundamental Capital provide the Plan with copies of the Audited Financial Statements for Fundamental Credit for 2017 and 2018. However, the Plan only received the Audited Financial Statements for 2017 on December 21, 2019. As of the filing of this Complaint, the Plaintiffs have still not received audited financial statements for Fundamental Credit for 2018 or 2019.

62.     Fundamental Credit was also supposed to provide its partners with monthly statements showing their interest.  However, the Defendants stopped sending monthly statements to the partners in July 2019, almost a year ago

63.     This means that the Plaintiffs do not know exactly how much of the Plan's assets are invested in Cyber adAPT notes and securities. This makes it impossible for the Plan to adequately assess its portfolio risk.

## VII.    THE DEFENDANTS' BREACH OF DUTY

64.     Defendants Fundamental Capital and Krieger owed a fiduciary duty to the Plan to invest its money in a reasonable and suitable manner. Defendants were aware that the Plan's assets were used almost exclusively to provide retirement benefits for its participants. In many cases the Plan's benefits are a large portion of its participant's retirement income.

65.     The Defendants' fiduciary duty is specifically acknowledged in the Offering Memorandum, which states: "The General Partner is accountable to the Partnership as a common law fiduciary and consequently must exercise good faith and integrity in handling Partnership affairs."

66.     The Defendants were also aware of the Plan's stated investment goals of risk aversion and liquidity, and the Plan preference to invest in securities that "can be sold quickly and efficiently."

67.     The Plan at all times acted reasonably and invested only in investment vehicles it believed were reasonably safe and suitable for its goals of maintaining assets in a retirement plan.

68.     Defendants knew that Fundamental Credit's move away from being a "fund of funds" and increasing investments in Cyber adAPT were risky and illiquid and therefore unsuitable for the Plan. However, the Defendants continued to make unsuitable investments and failed to advise the Plan of the true nature of Fundamental Credit's investment and riskiness. This was a breach of Defendants' duty.

69.     The Defendants never revealed their conflict of interests from Krieger's positions in Cyber adAPT. Both the Offering Memorandum and the Limited Partnership Agreement have sections on conflicts of interest, See Exhibit A at 12.1 on Page 28. Those provisions specifically mention Krieger's involvement with another fund that Fundamental Credit might invest in, but do not mention Krieger's various roles at Cyber adAPT. Nor was Krieger's involvement ever revealed to the Plaintiffs or other limited partners.

70.     Defendants also failed to advise the Plan that Defendant Krieger was an insider and had an interest in Cyber adAPT. Defendants' use of Fundamental Credit's assets to invest more and more money in Cyber adAPT was done not for the benefit of the Plan and the other investors in Fundamental Capital, but rather done for the Defendants' own benefit, to prop up and increase the value of Cyber adAPT.

71.     The Defendants charged an annual management fee of 1% of Fundamental Credit's assets. The Defendants also charged a "Special Allocation" of 10% of Fundamental Credit's profits every year. Over the course of its investment the Plan has paid the Defendants over $250,000 in fees relating to the Plan's investment in Fundamental Credit. The Defendants retained those fees despite knowing that their actions were in breach of their fiduciary and other duties and contrary to the Plan's investment objective.

## VIII.     CLAIMS FOR RELIEF

### FIRST CLAIM

### Violation of ERISA § 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D)

### Breach of Fiduciary Duties

72.     Plaintiffs incorporate by reference each allegation in the previous paragraphs as if fully set forth herein.

73.     At all relevant times, both Defendants acted as fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) with respect to investment and management of the Plan's assets in Fundamental Credit.

74.     The Defendants acknowledge, in the Offering Memorandum, that they are fiduciaries under ERISA if over 25 percent of Fundamental Credit is owned by ERISA plans.

75.     The Plan owned approximately 21.5 percent of Fundamental Credit on December 31, 2017. Upon information and belief, there were other ERISA funds who are limited partners in Fundamental Credit that, collectively with the Plan, owned more than 25 percent of Fundamental Credit, thus passing the 25 percent threshold.

76.     In an email dated April 10, 2019, Defendant Krieger admitted that, as of the end of 2017, more than 25% of Fundamental Credit was owned by ERISA plans.

77.     The Limited Partnership Agreement deems the names and identities to be secret, so that any limited partner is not entitled to know who the other limited partners are.

78.     ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

79.     A fiduciary's duties include a continuing duty to monitor investments and remove imprudent ones. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015).

80.     ERISA § 409(a), 29 U.S.C. § 1109(a), states in relevant part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to other such equitable or remedial relief as the court may deem appropriate.

81.     Defendants Fundamental Capital Management and John Woodrow Krieger are both "fiduciaries" under ERISA § 3(21), 19 U.S.C. § 1002(21), because they exercise discretionary authority or discretionary control respecting management or disposition of the Plan's assets, including to the decision to increase the percentage of Fundamental Credit's investments in Cyber adAPT.

82.     Defendants violated their obligations under ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D) by failing to discharge their duties for the exclusive purpose of providing benefits to the Plan; by failing to exercise the care, skill, prudence, and diligence that a prudent person would use under similar circumstances; and by failing to diversify investments so as to minimize the risk of large losses.

83.     Defendants breached their fiduciary duties and caused Fundamental Credit to become less diversified over time, by ceasing to invest in other funds and increasing its investment, both the dollars and as a percentage of Fundamentals Credit's overall assets, in a single company, Cyber adAPT. By doing so, Defendants increased the likelihood of large losses for the Plan.

84.     Defendants also failed to properly inform the Plan that Fundamental Credit was increasingly invested in illiquid assets of a single company, Cyber adAPT. Defendants also failed to disclose that Krieger was a board member of Cyber adAPT and had been its CEO. Such omissions were material to the Plan's investment decisions.

85.     Defendants further breached their fiduciary duties by failing to timely provide the Plan with the Audited Financial Statements for Fundamental Credit that the Plan had requested on several occasions, as a prudent person acting in a like capacity familiar with such matters would have done.

86.     Plaintiffs detrimentally relied on Defendants' acts and omissions by continuing to invest with Fundamental Credit.

87.     Defendants further breached their fiduciary duties by failing to fully redeem and return to the Plan the Plan's entire investment in Fundamental Credit.

88.      Because of Defendants' breaches of fiduciary duties, Plaintiffs seek an injunction from this Court ordering Defendants to return all of the Plan's investments with Fundamental Credit, disgorgement of Defendants' profits, and any other equitable relief available under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3); attorneys' fees and costs available under ERISA § 502(g), 29 U.S.C. § 1132(g); and any other relief this Court deems appropriate.

## SECOND CLAIM
### Violations of ERISA § 406, 29 U.S.C. § 1106
### Engaging in Prohibited Transactions

89.     Plaintiffs incorporate by reference each allegation in the previous paragraphs as if fully set forth herein.

90.     ERISA § 406(a)(1) provides in relevant part:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

\*\*\*

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan [.]

91.     ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" with respect to an employee benefit plan as:

> (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
>
> (B) a person providing services to such plan;
>
> (C) an employer any of whose employees are covered by such plan;
>
> (D) an employee organization any of whose members are covered by such plan;
>
> (E) an owner, direct or indirect, of 50 percent or more of—
>
>> (i)    the combined voting power of all classes of stock entitled to vote or the total value of share of all classes of stock of a corporation.
>> (ii)   the capital interest or the profits interest of a partnership, or
>> (iii)  the beneficial interest of a trust or unincorporated enterprise,
>
>> which is an employer or an employee organization described in subparagraph (C) or (D);
>
> (F) a relative . . . of any individual described in subparagraph (A), (B), (C), or (E);
>
> (G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of—
>
>> (i)    the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation,
>> (ii)   the capital interest or profits interest of such partnership, or
>> (iii)  the beneficial interest of such trust or estate,
>
>> is owned directly or indirect, or held by persons described in subparagraph (A), (B), (C), (D), or (E);

(H) an employee, officer, or director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10 percent or more shareholder directly or indirectly, of a person described in subparagraph (B), (C), (D), (E), or (G), or of the employee benefit plan; or

(I) a 10 percent or more (directly or indirectly in capital or profits) partner or joint venture of a person described in subparagraph (B), (C), (D), (E), or (G).

92.     ERISA § 406(b) provides:

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

93.     Defendants Fundamental Capital Management and John Woodrow Krieger are both "fiduciaries" under ERISA § 3(21), 29 U.S.C. § 1002(21), because they exercise discretionary authority or discretionary control respecting management or disposition of the Plan's assets.

94.     As fiduciaries, Defendants Fundamental Capital Management and Krieger are also "parties in interest" under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

95.     Defendants Fundamental Capital Management and Krieger are also "parties in interest" under ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because they are persons providing services to the Plan.

96.     Defendant Fundamental Capital Management is also a "party in interest" under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G), because 50 percent or more is owned by a person described in subparagraphs (A) or (B), Defendant Krieger.

97. Defendant Krieger is also a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), because he is an officer and director of an entity described in subparagraph (B), Defendant Fundamental Capital Management.

98. As detailed *supra*, Krieger is and at all relevant times has been the Principal and Chief Investment Officer of Defendant Fundamental Capital Management. Fundamental Credit's general partner is and at all relevant times has been Defendant Fundamental Capital Management.

99. By causing Fundamental Credit to invest the Plan's assets in Cyber adAPT,  on whose board Krieger sits and of which Krieger was CEO, without disclosing this information to the Plan, fiduciary Krieger caused the Plan to engage in a transaction that transferred the Plan's assets to a party in interest, Fundamental Capital Management, in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

100. Likewise, fiduciary Fundamental Capital Management caused the Plan to engage in a transaction that transferred the Plan's assets to a party in interest, Krieger, in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

101. By causing Fundamental Credit to invest the Plan's assets in Cyber adAPT, on whose board Krieger sits and of which Krieger was CEO, without disclosing this information to the Plan, fiduciaries Krieger and Fundamental Capital also dealt with the Plan's assets in their own interests, in violation of the prohibition on self-dealing of ERISA § 406(b), 29, U.S.C. § 1106(b).

102. Because Defendants engaged in prohibited transactions with parties in interest and self-dealing, Plaintiffs seek an injunction from this Court ordering Defendants to return all of the Plan's investments with Fundamental Credit, disgorgement of Defendants' profits, and any other equitable relief available under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3); attorneys' fees and costs

available under ERISA § 502(g), 29 U.S.C. § 1132(g); and any other relief this Court deems appropriate.

## THIRD CLAIM

### Breach of Common Law Fiduciary Duty

103.    Plaintiffs incorporates by reference each allegation set forth in the previous paragraphs as if fully set forth herein.

104.    There exists an actual fiduciary relationship between Defendants Fundamental Capital Management and John Woodrow Krieger and the Plan because Defendants exercise discretionary authority or discretionary control respecting management or disposition of the Plan's assets.

105.    As detailed *supra*, Krieger is and at all relevant times has been the Principal and Chief Investment Officer of Defendant Fundamental Capital Management. Fundamental Credit's general partner is and at all relevant times has been Defendant Fundamental Capital Management.

106.    By causing Fundamental Credit to invest the Plan's assets in Cyber adAPT, on whose board Krieger sits and of which Krieger was CEO, without disclosing this information to the Plan, fiduciaries Krieger and Fundamental Capital engaged in self-dealing in violation of their duty of loyalty to the Plan.

107.    Defendants also breached their duty of prudence by causing Fundamental Credit to become less diversified over time, by ceasing to invest in other Plans and increasing its investment, both the dollars and as a percentage of Fundamentals Credit's overall assets, in a single company, Cyber adAPT. By doing so, Defendants increased the likelihood of large losses for the Plan

108.    Defendants also failed to properly inform the Plan that Fundamental Credit was increasingly invested in illiquid assets of a single company, Cyber adAPT. Defendants also failed

to disclose that Krieger was a board member of Cyber adAPT and had been its CEO. Such omissions were material to the Plan's investment decisions.

109.   Defendants further breached their fiduciary duties by failing to timely provide the Plan with the Audited Financial Statements for Fundamental Credit that the Plan had requested on several occasions, as a prudent person acting in a like capacity familiar with such matters would have done.

110.   Because of Defendants breached their fiduciary duties to the Plan, Plaintiffs seeks rescission of the Plan's investments with Fundamental Credit, disgorgement of Defendants' profits, attorneys' fees and costs, and any other equitable relief this Court deems appropriate.

## FOURTH CLAIM

### Negligence

111.   Plaintiffs incorporate by reference each allegation set forth in the previous paragraphs as if fully set forth herein.

112.   As described more fully *supra*, Defendants Fundamental Capital Management and John Woodrow Krieger owed duties of loyalty and prudence to the Plan in the exercise of their discretionary authority and control respecting management or disposition of the Plan's assets.

113.   As described more fully *supra*, Defendants breached their duties by causing Fundamental Credit to become less diversified over time, by ceasing to invest in other funds and increasing its investment, both the dollars and as a percentage of Fundamentals Credit's overall assets, in a single company, Cyber adAPT. By doing so, Defendants increased the likelihood of large losses for the Plan.

114.   Defendants also breached those duties by causing Fundamental Credit to invest the Plan's assets in Cyber adAPT, on whose board Krieger sits and of which Krieger was CEO, without

disclosing this information to the Plan. Defendants also failed to properly inform the Plan that Fundamental Credit was increasingly invested in illiquid assets of Cyber adAPT.

115.    Defendants further breached their duties by failing to timely provide the Plan with the Audited Financial Statements for Fundamental Credit that the Plan had requested on several occasions, as a prudent person acting in a like capacity familiar with such matters would have done.

116.    Defendants' omissions and misrepresentations caused the Plan to continue and even increase its investments with Fundamental Credit. If the Plan had known the truth, it would not have continued these investments and would have demanded return of its investment.

117.    Defendants' negligence caused Plaintiffs to suffer damages in the form of a loss of their investment funds, lost profits, and improper fees. Plaintiffs seeks restitution, attorneys' fees and costs, and any other relief this Court deems appropriate.

## FIFTH CLAIM

### Gross Negligence

118.    Plaintiffs incorporates by reference each allegation set forth in the previous paragraphs as if fully set forth herein.

119.    As described more fully *supra*, Defendants Fundamental Capital Management and John Woodrow Krieger owed duties of loyalty and prudence to the Plan in the exercise of their discretionary authority and control respecting management or disposition of the Plan's assets.

120.    As described more fully *supra*, Defendants breached their duties by causing Fundamental Credit to become less diversified over time, by ceasing to invest in other funds and increasing its investment, both the dollars and as a percentage of Fundamentals Credit's overall

assets, in a single company, Cyber adAPT. By doing so, Defendants increased the likelihood of large losses for the Plan.

121.    Defendants also breached those duties by causing Fundamental Credit to invest the Plan's assets in Cyber adAPT, on whose board Krieger sits and of which Krieger was CEO, without disclosing this information to the Plan. Defendants also failed to properly inform the Plan that Fundamental Credit was increasingly invested in illiquid assets of Cyber adAPT.

122.    Defendants further breached their obligations by failing to timely provide the Plan with the Audited Financial Statements for Fundamental Credit that the Plan had requested on several occasions, as a prudent person acting in a like capacity familiar with such matters would have done.

123.    Defendants' actions demonstrated a lack of even a scant level of care and were an extreme departure from the ordinary standard of conduct so as to constitute gross negligence.

124.    Defendants' omissions and misrepresentations caused the Plan to continue and even increase its investments with Fundamental Credit. If the Plan had known the truth, it would not have continued these investments.

125.    Defendants' gross negligence caused Plaintiffs to suffer damages in the form of a loss of their investment funds, lost profits, and improper fees. Plaintiffs seeks restitution, attorneys' fees and costs, and any other relief this Court deems appropriate.

## SIXTH CLAIM

### Unjust Enrichment

126.    Plaintiffs incorporate by reference each allegation set forth in the previous paragraphs as if fully set forth herein.

127.     Defendants Krieger and Fundamental Capital Management received benefits from Plaintiffs when the Plan invested its assets with Fundamental Credit, in the form of Fundamental Capital Management's fees and share of the profits as General Partner of Fundamental Credit.

128.     Defendant Krieger also received benefits from Plaintiffs in the form of using the Plan's investment funds to support Cyber adAPT, a business in which Krieger had a substantial and undisclosed personal interest.

129.     Given their omissions and misrepresentations, it would be unjust for Defendants to retain these benefits at the expense of Plaintiffs.

130.     Because Defendants have been unjustly enriched, Plaintiffs seeks disgorgement of profits, attorneys' fees and costs, and any other relief this Court deems appropriate.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

    a.   Declare that Defendants violated ERISA in the manner set forth above;

    b.   Order Defendants to return the entire amounts of Plaintiffs' investments with
       Fundamental Credit;

    c.   Order disgorgement of Defendants' fees and profits derived from Plaintiffs'
       investments;

    d.   Award Plaintiffs attorneys' fees and costs; and

    e.   Award other relief this Court deems appropriate.

Plaintiffs demand a trial by jury on all claims so triable.


June 11, 2020                                        Respectfully submitted,

                                                   /s/ Claiborne S. Newlin
                                                   Claiborne S. Newlin, Esq.
                                                   Delaware ID No. 4745
                                                   MARKOWITZ & RICHMAN
                                                   Legal Arts Building
                                                     1225 King Street, Suite 804
                                                   Wilmington, DE 19801
                                                   Tel.: (302) 656-2308
                                                   Fax: (215) 790-0668
                                                   cnewlin@markowitzandrichman.com

                                                   John A. Macoretta
                                                   Diana J. Zinser
                                                   SPECTOR ROSEMAN & KODROFF, P.C.
                                                   2001 Market Street, Suite 3420
                                                   Philadelphia, PA 19103
                                                   Phone: (215) 496-0300
                                                   jmacoretta@srkattorneys.com
                                                   dzinser@srkattorneys.com

                                                   *Attorneys for Plaintiffs*